UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE GILLIT, | No. 2:22-cv-2050 DB |
| Plaintiff, | |
| v. | ORDER |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff argues that the ALJ's step two finding, treatment of the medical opinion evidence, and residual functional capacity determination were erroneous. For the reasons explained below,

////

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. See https://blog.ssa.gov/martin-j-omalley-sworn-in-as-commissioner-of-social-security-administration/ (last visited by the court on February 21, 2024). Accordingly, Martin O'Malley is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF No. 9.)

1

1  plaintiff's motion is granted, the decision of the Commissioner of Social Security

2  ("Commissioner") is reversed, and the matter is remanded for immediate payment of benefits.

## PROCEDURAL BACKGROUND

In October of 2013, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on April 10, 2012. (Transcript ("Tr.") at 1838-39.) Plaintiff's applications were denied initially, (id. at 213-17), upon reconsideration, (id. at 221-26), and after an administrative hearing before an Administrative Law Judge ("ALJ"). (Id. at 11.) On April 4, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Id. at 1.)

Thereafter, this action was twice previously been before this court. On the first occasion, the court granted plaintiff's motion for summary judgment and remanded the matter for further proceedings. See Gillit v. Berryhill, No. 2:17-cv-1126 AC, 2018 WL 4538274 (E.D. Cal. Sept. 21, 2018). After further proceedings resulted in another finding that plaintiff was not disabled, plaintiff initiated another action in this court, which resulted in the court granting defendant's motion for summary judgement. See Gillit v. Commissioner of Social Security, No. 2:19-cv-1542 KJN, 2020 WL 5074020 (E.D. Cal. 2020). However, pursuant to the parties' joint motion, the Ninth Circuit vacated the court's order and directed this court to remand the case for further administrative proceedings. See Gillit v. Saul, No. 20-17123, 2021 WL 4144987 (9th Cir. 2021).

Another hearing was held before an ALJ on June 14, 2022. (Id. at 1592-1625.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 1592-96, 1609.) In a decision issued on August 19, 2022, the ALJ found that plaintiff was not disabled at any time through June 30, 2013. (Id. at 1577.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since April 10, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. Since the alleged onset date of disability, April 10, 2012, the claimant has had the following severe impairments: degenerative

2

disc disease of the lumbar spine, right cubital tunnel syndrome with neuropathy, carpal tunnel syndrome (CTS), degenerative joint disease of the right knee, alcohol use disorder, psychotic disorder not otherwise specified or schizoaffective disorder, major depressive disorder, and panic or generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. Since April 10, 2012, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that since April 10, 2012, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally stoop and bend. She can frequently handle and finger with right upper extremity. She is limited to simple, routine and repetitive tasks. She is limited to a low stress work environment, defined as occasional decision making and occasional changes in the work setting. She is limited to occasional contact with coworkers, supervisors and the public.

6. Since April 10, 2012, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On January 26, 2022, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Prior to January 26, 2022, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on March 10, 2016, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to January 26, 2022, considering the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Beginning on January 26, 2022, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

3

> 12. The claimant was not disabled prior to January 26, 2022, but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date (20 CFR 404.1520(g) and 416.920(g)).
>
> 13. The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 2013, the date last insured (20 CFR 404.315(a) and 404.320(b)).
>
> 14. The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

(Id. at 1558-77.) Plaintiff again sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 14, 2022. (ECF. No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

////

4

>Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
>Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
>Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
>Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following three principal claims: (1) the ALJ erred at step two of the sequential evaluation; (2) the ALJ's treatment of the medical opinion evidence constituted error; (3) the ALJ's residual functional capacity determination was erroneous.  (Pl.'s MSJ (ECF No. 15) at 7-20.[3])

**I.     Step Two Error**

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a) & 416.921(a).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include:  (1) physical functions such

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

5

as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153.  However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").  "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, at step two of the sequential evaluation the ALJ found "the evidence of record does not support a medically determinable cognitive impairment."  (Tr. at 1559.)  The evidence of record, however, included Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) tests, which plaintiff "achieved a borderline Verbal Comprehension Index (VCI) scores of 70-76, low average-to- borderline Perceptual Reasoning Index (PRI) scores of 77-81 and borderline Full

Scale IQ (FSIQ) scores of 70-71." Id. The record also included Wechsler Memory Scale-Fourth Edition (WMS-IV) tests, which plaintiff "achieved borderline and extremely low scores." (Id.) The evidence of record also included the opinion of examining physician, Lauri Stenbeck, Psy.D. (Id. at 1334.) Dr. Stenbeck examination and testing found that plaintiff's "intellectual abilities are in the borderline range with extremely low to borderline memory abilities." (Id. at 1342.)

"[C]ase law indicates that borderline intellectual functioning should be considered a severe impairment." Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); see also Nicola v. Astrue, 480 F.3d 885, 887 (8th Cir. 2007) ("A diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence."). Here, the ALJ attempted to support the decision to find plaintiff's cognitive impairment not severe by providing reasons not to credit the evidence establishing plaintiff's cognitive impairment. (Tr. at 1559-60.)

However, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687. On this record, the court cannot say that it was clearly established by the medical evidence that plaintiff's cognitive impairment was not severe during the period at issue. See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."); Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability.").

////

1   Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ erred at
2   step two of the sequential evaluation.

**II.     Medical Opinion Evidence**

For Social Security disability cases filed prior to March 27, 2017, the weight to be given to medical opinions depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.[4]  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, plaintiff's treating psychiatrist, Suryabanu Javeed, M.D., opined that plaintiff could not maintain regular attendance, be punctual, work in proximity to others, accept instructions, respond appropriately to criticism for supervisors, get along with coworkers, or deal with normal

---

[4] Effective March 27, 2017, Revisions to Rules Regarding the Evaluation of Medical Evidence went into effect.  Plaintiff's application, however, was filed prior to March 27, 2017.  "For claims filed before March 27, 2017, but not decided until after that date . . . the rules listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) apply."  Edinger v. Saul, 432 F.Supp.3d 516, 530 (E.D. Pa. 2020).

work stress. (Tr. at 1344-48, 1573 .)  Moreover, it was Dr. Javeed's opinion that plaintiff would miss more than three workdays per month due to plaintiff's impairments. (Id.)  The ALJ purportedly gave "great weight" to Dr. Javeed's opinion as to plaintiff's "ability to deal with normal work stress and little weight to the remaining opinion" for "the same reasons discussed regarding Dr. Hooper's medical opinion. (Id.)  The ALJ then concluded, "I give little weight to Dr. Javeed's opinion." (Id.)

   The ALJ erred in at least two respects.  First, an ALJ errs when "[s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for h[er] conclusion." Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014); see also Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989) ("Here, although the ALJ did attempt to relate the objective findings to Dr. Pettinger's medical opinion . . . he appears ultimately to have stated that the opinion was not supported by the objective findings.  As we have already discussed, and as our case law clearly establishes, this is not sufficient."); Embrey, 849 F.2d at 421-22 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

   Second, the opinion vaguely referred to by the ALJ as provided by "Dr. Hopper," was provided by Dr. Laura Hopper, a nonexamining physician. (Tr. at 1571.)  "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); see also Reddick, 157 F.3d at 725 ("The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.").  As noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1202 (9th Cir. 2008) (quoting Lester, 81 F.3d at 831).

In affording "great weight" to Dr. Hooper's opinion the ALJ relied on vague and conclusory references to plaintiff's "ability to independently care for an infant, positive response to treatment, largely intact cognition, average intelligence and intact memory despite some evidence of paranoid thought content and substance use disorder," as well as "positive response to treatment[.]"[5] (Tr. at 1571.) Even if the ALJ specifically relied on these reasons for rejecting Dr. Javeed's opinion, it would be erroneous.

In this regard, the ALJ cites to no evidence in support of these assertions. The ALJ's own opinion, however, did discuss and cite to evidence of plaintiff's "long history of mental health treatment for a range of mental impairments, including psychotic disorder, schizoaffective disorder, major depressive disorder, panic disorder and generalized anxiety disorder." (Id. at 1568.) That plaintiff had been treated with "psychotropic medication and mental health counseling," resulting in "less hallucinations." (Id.) That at times plaintiff presented for treatment "as anxious with depressed, sad and/or flat affect." (Id.) Plaintiff was also treated with "antipsychotic and antidepressant medications." (Id. at 1569.) Plaintiff "endorsed psychotic symptoms," "paranoid delusions, low stress tolerance and auditory, visual and tactile hallucinations." (Id.)

The ALJ's vague and conclusory reference to plaintiff's "positive response to treatment" is particularly concerning. The Ninth Circuit has explained that:

> Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison, 759 F.3d at 1017. Moreover,

> Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.

---

[5] "[T]he mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitation." Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017).

10

Id.; see also Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011) ("although Scott had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits"). That someone dealing with mental illness "makes some improvement does not mean that the person's impairment no longer seriously affects [her] ability to function in a workplace." Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014).

Here, Dr. Javeed was both plaintiff's treating physician and a specialist. The opinions of a medical specialist regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty."). In rejecting Dr. Javeed's opinion the ALJ failed to offer a specific and legitimate reason supported by substantial evidence in the record.

Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion offered by Dr. Javeed constituted error.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'"[6] Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

---

[6] Having already identified errors, and upon review of the record, the court finds it unnecessary to reach plaintiff's remaining claims of error. See Janovich v. Colvin, No. 2:13-cv-0096 DAD, 2014 WL 4370673, at *7 (E.D. Cal. Sept. 2, 2014) ("In light of the analysis and conclusions set forth above, the court need not address plaintiff's remaining claims of error."); Manning v. Colvin, No. CV 13-4853 DFM, 2014 WL 2002213, at *2 (C.D. Cal. May 15, 2014) ("Because the Court finds that the decision of the ALJ must be reversed on the basis of the stooping limitation, the Court need not address Plaintiff's remaining contentions.").

11

> discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Plaintiff applied for benefits more than 10 years ago. (Def.'s Mot. (ECF No. 18) at 2.) As noted above, this is the third time the ALJ's decision has been reversed. Under such circumstance sending this matter back to the ALJ for a fourth bite at the apple would be questionable at best. See, e.g., Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

Most importantly though, if the improperly discredited evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand. In this regard, Dr. Javeed's opinion alone establishes plaintiff's disability as confirmed by the VE's testimony. (Tr. at 1621.) "Such a finding by the vocational expert is a sufficient basis upon which to remand for determination of benefits." Wechel v. Berryhill, 713 Fed. Appx. 559, 562 (9th Cir. 2017); see also Varela v. Saul, 827 Fed. Appx. 713, 714-15 (9th Cir. 2020) ("Further administrative proceedings are not necessary where the ALJ improperly rejected evidence, the record has been fully developed, and further proceedings would not be useful."). Furthermore, the record as whole does not create

serious doubt as to whether plaintiff is disabled.  See Moe v. Berryhill, 731 Fed. Appx. 588, 592 (9th Cir. 2018) ("Remand for immediate award of benefits is appropriate in this case because all three factors of the credit-as-true rule are satisfied, leaving no 'serious doubt' as to Moe's disability.").  This case, therefore, will be remanded for the immediate award of benefits.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 18) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 8, 2024               /s/ DEBORAH BARNES
                                   UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\gillit2050.ord